**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| M.A., Plaintiff, | **Civil Action No. 25-4248 (SRC)** |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, Defendant. | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff M.A. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this case arose in the context of Plaintiff's turning 18 and entering adulthood. Plaintiff had been determined to be disabled as a child, and turned 18 in 2014.[1] On March 3, 2015, the Commissioner determined that, under the rules for determining disability in adults, Plaintiff was not disabled as of March 1, 2015. A hearing was held in 2020, leading to an unfavorable decision, then an appeal by Plaintiff of the Commissioner's final decision, which

[1] Plaintiff was born on February 6, 1996 and turned 18 on February 6, 2014.

this District Court vacated and remanded. On remand, another hearing was held before ALJ Peter R. Lee (the "ALJ") on May 15, 2023, and the ALJ issued an unfavorable decision on February 16, 2024, finding that Plaintiff had not been disabled during the period in question. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of February 16, 2024, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform work at all levels of exertion, with certain non-exertional limitations, including a limitation to simple, routine tasks. At step four, the ALJ also found that Plaintiff had no past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On appeal, Plaintiff makes two arguments: 1) "Once again, and in defiance of the prior district court opinion the ALJ relied entirely on the DDS mental RFC assessment of a file review psychologist to establish plaintiff's mental RFC without articulating how this assessment reflected the weight of the record evidence" (Pl.'s Br. at 1); and 2) "the ALJ's second decision repeats the prior rejected RFC based upon a DDS review opinion which itself is based on evidence from a period of Plaintiff's childhood and not on contradictory evidence from Plaintiff's adulthood." (Id.)

By way of background, this Court and this Judge decided the previous Social Security appeal case filed by this Plaintiff (Civil Action No. 21-964), issuing a decision dated March 23,

2022, whereupon that case was closed; this Court's Order on that date vacated and remanded the Commissioner's final decision. After remand and subsequent agency proceedings, the Commissioner issued a new final decision, and Plaintiff filed the instant appeal in this Court. By chance, the instant appeal was assigned to this Judge.

The argument section of Plaintiff's brief begins with this summary:

> Plaintiff argues that the substantial evidence in the administrative record establishes entitlement and eligibility for and to the benefits applied for and thus requests this Court to reverse the Commissioner's final administrative decision and order the payment of benefits. Alternatively, plaintiff argues that the Commissioner's final administrative decision is not based on the substantial evidence of record and thus requests this Court to remand that decision and order a new hearing and a new decision.

(Pl.'s Br. at 6-7.) The brief proceeds to argue that the ALJ "failed to adhere or even to acknowledge the findings and instructions of a District Court remand Order. . . once again failing even to acknowledge, much less follow the plain findings and instructions of the Court." (Pl.'s Br. at 7.)

This Court first addresses what Plaintiff has characterized as the ALJ's "defiance" of the remand Order. (Pl.'s Br. at 1.) The Court takes no position on the allegation of defiance because Plaintiff has not established a legal basis for consideration of questions of an ALJ's alleged defiance or compliance with a district court's judicial review decision in a previous appeal under 42 U.S.C. § 405(g). In support for this argument, Plaintiff relies on, as controlling authority, Sullivan v. Hudson, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.") This Court addressed this specific argument in D.P. v. Comm'r of Soc. Sec., 2025 LX 107253, at *5 (D.N.J. Apr. 23, 2025), a social security appeal case in which

the same argument was made, relying on the same quote just cited from Sullivan:

> The Supreme Court has subsequently limited the holding of Hudson to "those cases where the district court retains jurisdiction of the civil action." Melkonyan v. Sullivan, 501 U.S. 89, 97, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991); see also Shalala v. Schaefer, 509 U.S. 292, 300, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993) ("We therefore do not consider the holding of Hudson binding as to sentence-four remands that are ordered (as they should be) without retention of jurisdiction.")

See also R.C. v. Comm'r of Soc. Sec., 2026 LX 35097, at *5 (D.N.J. Feb. 18, 2026) (further discussion of the same argument). Sentence 4 of § 405(g) provides that "court[s] shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). In Civil Action No. 21-964, this Court entered a judgment modifying the Commissioner's decision, and remanding the case, pursuant to sentence 4; that Order was a sentence 4 remand and, pursuant to the Supreme Court's decision in Shalala, Hudson does not apply to it. Civil Action No. 21-964 was terminated and the district court did not retain jurisdiction over that case, which is reflected in the fact that the instant appeal is a new case with a different Civil Action number.

At the outset, the Court observes that the authorizing statute does not grant the district court the authority to review matters outside of the Commissioner's final decision, such as compliance with a prior remand order. The statute, 42 U.S.C. § 405(g), states:

> **Judicial review.** Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . .

Plaintiff has appealed the final decision of the Commissioner under § 405(g), and the statute authorizes this Court to review that final decision only. Nothing in the authorizing statute allows this Court to review previous vacated decisions of the Commissioner or the decisions of previous District Courts in previous appeal cases. Pursuant to § 405(g), this Court limits its consideration of Plaintiff's arguments on appeal to arguments that concern the specific final decision of the Commissioner that Plaintiff has appealed, and this Court does not consider issues outside the boundary clearly drawn by § 405(g), such as past vacated final decisions of the Commissioner nor the decisions of District Courts which vacated those decisions – not even when it was this Judge that issued the prior judgment remanding the case.

For these reasons, this Court rejects Plaintiff's argument that consideration of any deviation ( or "defiance," as Plaintiff calls it) by the Commissioner from the terms of the prior remand Order is proper in a subsequent proceeding seeking judicial review, pursuant to § 405(g). The Court now turns to the task of judicial review of the Commissioner's final decision, as authorized by § 405(g).

The resultant problem for Plaintiff is that Plaintiff's brief puts greatest emphasis on the rejected defiance argument and does not both raise and sufficiently develop the other arguments. The Court will nonetheless address what Plaintiff has presented in addition to the defiance argument.

Plaintiff's second argument contends that the ALJ's formulation of Plaintiff's mental residual functional capacity is nearly identical to the formulation that appeared in the previous ALJ decision, which had been criticized in the prior Opinion from this Court. Plaintiff argues

that, therefore, the mental RFC is not supported by substantial evidence. As already explained, pursuant to § 405(g) and Third Circuit law: "We review the administrative judge's findings of fact and her ultimate decision to deny benefits deferentially for substantial evidence." Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024). This Court thus must decide this appeal based on a review of the Commissioner's determination at step four for substantial evidence (since it is the step four RFC determination that Plaintiff has challenged.)

At step four, the ALJ's decision begins with a statement of the residual functional capacity ("RFC") determination:

> After careful consideration of the entire record, I find that since March 1, 2015, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can occasionally kneel and crawl; and must have proximate access to restroom facilities. The claimant can have occasional contact with supervisors and co-workers, but no contact with the public other than incidental contact. The claimant's work must be performed in an environment free of fast-paced production requirements where productivity is measured at the end of the day and with only occasional changes to essential job functions. The claimant is able to perform only simple and routine tasks.

(Tr. 599.)

In the discussion of the RFC that follows, the ALJ first reviewed the objective medical evidence of mental health difficulties[2], beginning with a 2014 report from CPC Behavioral Healthcare. (Tr. 600.) The ALJ then described at some length the findings stated in a 2014 psychological evaluation by consultative examiner Dr. Brown. (Ex. 5F.) Dr. Brown observed poor focus and concentration during the evaluation, and diagnosed Plaintiff with learning disorder, depression, and conduct disorder. (Tr. 500-501.) Dr. Brown reported that, during the

[2] There is no dispute between the parties that no significant physical or exertional limitations are at issue.

evaluation, Plaintiff had denied having problems with anxiety. (Tr. 501.)

The ALJ next discussed a 2018 letter from Dr. Kaufman, which reported that Plaintiff appears "exceptionally insecure," and is "fearful of people, so much so that just the thought of interaction with others can lead to panic attacks." (Tr. 521.) Records from the Passion Care Center over a few months in 2019 also referred to Plaintiff's having an anxiety disorder. (Tr. 601, 570.) A psychological evaluation report from Dr. Fleischer in 2020 reported IQ testing with results in the low average range of intelligence. (Tr. 601, 578.) Dr. Fleischer diagnosed Plaintiff with agoraphobia with panic disorder, and social phobia. (Tr. 601, 579.)

The ALJ next discussed the records connected to an accident that occurred in April of 2022, when Plaintiff was riding a dirt bike and suffered a knee injury. (Ex. 16F.) Almost a year later, in February of 2023, Plaintiff contacted Clarity Treatment Center. (Ex. 17F.) Records from Clarity Treatment Center report that Plaintiff stated that he had "volunteered" to come for treatment[3] after having been charged with DUI in connection with the dirt bike accident; according to the intake record, Plaintiff admitted that he had been drinking alcohol that day and had been found with marijuana, but he denied being drunk at the time of the accident. (Tr. 601-602, 956.) The Clarity Treatment Center intake record states that Plaintiff reported overwhelming anxiety and a need for medication. (Tr. 601, 956.)

The ALJ next discussed the medical opinion evidence, beginning with the 2015 report from state agency psychological consultant Dr. Flaherty. Dr. Flaherty summarized her evaluation as follows:

The clmt can understand & follow short & simple instructions, learn and perform

[3] Other records state that Plaintiff was on probation subsequent to his DUI and was referred to Clarity Treatment Center by the probation department. (Tr. 966.)

> simple, repetitive tasks, behave appropriately and adapt to minor changes.
>
> From a psych standpoint, the clmt can sustain focus, memory, basic social interaction and mental pace/persistence for simple, routine tasks.

(Tr. 505.) The ALJ concluded that Dr. Flaherty's opinion should be given significant weight because her opinions were supported by the objective medical evidence. (Tr. 602.) The ALJ then discussed in detail how particular pieces of evidence of record supported particular aspects of Dr. Flaherty's opinion. The ALJ first pointed to the evidence from the 2014 psychological evaluation by Dr. Brown, noting that Dr. Brown had described Plaintiff as "pleasant and cooperative" and maintained good eye contact, which the ALJ found to be consistent with Dr. Flaherty's findings of moderate limitations in the ability to interact appropriately with supervisors and co-workers. (Tr. 602.)

The ALJ next referred to the consistency of Dr. Flaherty's assessment with the mental health evidence discussed in regard to the "paragraph B" criteria at step three. The ALJ noted the overlap between Dr. Flaherty's assessment and the four areas of mental functioning specified in the "paragraph B" criteria, see Listing 12.00E(1-4). The ALJ then provided a summary of the analysis and evidence related to the "paragraph B" criteria at step three.

In brief, at step three, the ALJ determined that the evidence of record showed moderate limitations in the area of understanding, remembering, and applying information, citing four pieces of medical evidence, including the 2023 Intake Psychiatric Assessment from Clarity Treatment Center ("no signs of cognitive difficulties") (Tr. 957), the 2020 psychological evaluation by Dr. Fleischer ("Mario functions in the Low Average Range showing slight intellectual impairment") (Tr. 579), the 2014 evaluation by Dr. Brown (mental status exam did not show any significant difficulties) (Tr. 500-501), and the 2013 psychiatric assessment by Dr.

Sayyaparaju (thought process "generally goal-directed") (Tr. 406).

Next, at step three, the ALJ determined that the evidence of record showed moderate limitations in the area of interacting with others, noting particularly that the medical evidence of record shows adequate interaction with all treating practitioners, citing the same four assessments just noted: the 2023 Intake Psychiatric Assessment from Clarity Treatment Center, the 2020 psychological evaluation by Dr. Fleischer, the 2014 evaluation by Dr. Brown (Tr. 500-501), and the 2013 psychiatric assessment by Dr. Sayyaparaju. The ALJ next determined that the evidence of record showed moderate limitations in the area of concentrating, persisting, and maintaining pace, noting particularly that the medical evidence of record did not evidence any serious problems with concentration during evaluation sessions, again citing the same four assessments.

The only area in which the ALJ determined that Dr. Flaherty's assessment was not consistent with and supported by the medical evidence of record is the fourth area in the "paragraph B" criteria, adapting or managing oneself, where Dr. Flaherty found no limitations. The ALJ determined that, as to this area, the evidence demonstrated moderate limitations, citing in particular the evidence of substance abuse. The ALJ thus determined that Dr. Flaherty's opinions about Plaintiff's functional limitations in three of the four areas of mental functioning set forth in Listing 12.00E(1-4) should be given significant weight because of their consistency with the other evidence of record.

Returning to the analysis of the opinion evidence at step four, the ALJ also discussed the weights given to the opinion evidence from Dr. Kaufman, APN Grant, and Dr. Fleischer. The ALJ explained that the opinion of Dr. Kaufman merits little weight because his statements were

inconsistent with the overall record evidence, which did not support Dr. Kaufman's assessments of inability to effectively communicate, effectively function with coworkers and employers, and to regularly perform job duties. The ALJ explained that the opinion of APN Grant deserved little weight because the short, single paragraph provided no support for its conclusions. As to the opinion of Dr. Fleischer, that Plaintiff is "disabled by a combination of lower-than-average intellectual functioning and severe emotional/behavioral difficulties," the ALJ found that the opinion neither explained what these severe emotional/behavioral difficulties were, nor was it consistent with the overall evidence of record.

The Court has reviewed the ALJ's discussion of the medical evidence of record at step four and finds that the residual functional capacity formulation is supported by substantial evidence. The ALJ explained in detail why greatest weight was given to the opinion of Dr. Flaherty. Although the ALJ did not refer specifically to 20 C.F.R. § 404.1520c, the analysis presented at step four follows that Regulation's mandate: the ALJ expressly stated that the weighting of the opinion evidence was based both on the factors of supportability (supporting explanations) and consistency (consistency with evidence from other medical sources), just as that Regulation requires.

Plaintiff has not raised any specific challenges to the ALJ's explanations for the weighting of the medical opinions, and the Court finds that the ALJ's determination that Dr. Flaherty's opinion deserved the greatest weight because of its consistency with the other evidence of record is supported by substantial evidence.

Plaintiff ends the brief with this statement:

> it is clear that the evidence of record does not support the mental RFC and the ALJ, ignoring much of the evidence and all of the District Court Opinion and

> Order, offers no support and no rationale for the adult RFC other than a file review opinion necessarily based exclusively based on evidence during plaintiff's childhood . . .

(Pl.'s Br. at 29.) The Court finds that Plaintiff has not persuaded that these assertions are supported by the record (leaving out the defiance argument which this Court has rejected.) Plaintiff has made no demonstration that the evidence of record does not support the mental RFC. In short, the ALJ explained that the RFC was based primarily on the assessment by Dr. Flaherty, which was given the greatest weight because of its consistency with the evidence of record. The ALJ offered a detailed analysis explaining how the evidence of record – particularly the mental health evaluations from 2023, 2020, 2015 and 2013 – were consistent with Dr. Flaherty's opinion and supported it. Plaintiff turned 18 in 2014. Plaintiff's argument that the decision "offers no support and no rationale for the adult RFC other than a file review opinion necessarily based exclusively based on evidence during plaintiff's childhood" does not square with what the ALJ actually wrote. (Pl.'s Br. at 29.) The ALJ determined that Dr. Flaherty's opinion was consistent with evidence both from before 2014 and after, including the most recent evidence in the record from 2020 and 2023. Plaintiff has not pointed to any specific evidence of record that the ALJ ignored or overlooked.

Furthermore, the most recent medical evidence of record strongly supports the ALJ's determination at step four. The psychiatric evaluation dated February 2, 2023 gives this summary:

> The patient was awake, alert, responsive, oriented to self, time, place, calm and cooperative. The patient denied and showed no sign of discomfort, denied any physical complaint, and no distress was reported. The patients appearance was appropriate for his age, moderately, appropriately dressed, neatly groomed, and appeared well-nourished. The mood was bright, with constricted and congruent affect, well-articulated speech with normal rate and volume, spontaneous, no

> pressured speech, and goal-directed. Behavior was appropriate, with good eye contact, and no aggression. No apparent signs of bizarre behaviors or other indicators of a psychotic disorder. There is no clinical sign or symptoms of schizophrenia, denied hearing voices and not seeing things that are not real or not seen by others, denied suicidal ideation, no thoughts or intentions, and no plan to hurt self or others. No sign of cognitive difficulties and thought contents are appropriate, the patient does not present any symptoms that interfere with his daily activities and executive function. Based on todays assessment, the patient is psychiatrically stable at the time of this evaluation, with the recommendation to be compliant with the prescribed medication.

(Tr. 957.) One statement appears particularly significant in the context of this appeal: "the patient does not present any symptoms that interfere with his daily activities and executive function." The Court acknowledges that the record contains reports of significant behavior problems during Plaintiff's childhood, ten years earlier, but this most recent evidence strongly supports the ALJ's determination that no mental limitations interfere with Plaintiff's ability to perform simple work.

This Court has reviewed the Commissioner's final decision, pursuant to § 405(g). Plaintiff has failed to persuade this Court that the ALJ erred in the decision, or that he was harmed by any errors. Plaintiff has not shown that the ALJ made any material and prejudicial error and has made no demonstration of prejudice as required by Shinseki. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: August 13, 2026